UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **NAUTILUS INSURANCE COMPANY,** as subrogee of **ELECTRO FINISHING, INC.,** <br><br> Plaintiff, <br><br> v. <br><br> **APPALACHIAN POWER COMPANY,** <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) **Civil Action No.: 7:19-cv-380** |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, TO DISMISS AS A SANCTION FOR <u>SPOLIATION OF EVIDENCE</u>**

Appalachian Power Company ("Appalachian") submits this reply brief in support of its motion for summary judgment or, alternatively, to dismiss this action as a sanction for the intentional spoliation of evidence by the plaintiff, Nautilus Insurance Company ("Nautilus").

**I.  PLAINTIFF HAS FAILED TO SHOW THAT THERE IS ANY MATERIAL FACT GENUINELY IN DISPUTE.**

Nautilus cannot escape summary judgment through mere conclusory assertions that there are facts in dispute. Rule 56(c) requires Nautilus to specifically identify and address record materials:

> (c) Procedures.
>
>> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>>
>>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Here, the brief in opposition simply identifies *issues* it claims are disputed, without citing or referring to any record materials that would establish a dispute. Indeed, the entire brief in opposition contains only two citations to the record – one for a fact that is not in dispute (but which actually supports Appalachian's alternative motion to dismiss for spoliation of evidence) and a second for a proposition that is not relevant to any issue in dispute.[1]

"[T]he nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." *Fisher v. Securitas Sec. Servs. USA, Inc.*, 2009 WESTLAW 5868580, at *3 (D.S.C., Dec. 2, 2009), *report and recommendation adopted as modified*, 2010 WESTLAW 568234 (D.S.C., February 12, 2010) (citing *Barber v. Hosp. Corp. of America*, 977 F.2d 874-75 (4th Cir. 1992)). The Court should grant Appalachian's motion for summary judgment based on Nautilus' inability to cite the Court to record materials containing admissible evidence supporting its conclusory assertions. *Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 394 (4th Cir. 1994) (affirming grant of summary judgment where nonmoving party "made no effort to call the court's attention to evidence in the record that [the moving party] had overlooked")*, cert. denied*, 513 U.S. 1191 (1995).

---

[1] The brief in opposition cites to the October 26, 2018 letter which plaintiff's counsel sent to Appalachian – but totally ignores the undisputed fact that Nautilus had allowed the fire scene to be razed two months prior to this letter (in August 2018). Plaintiff's Brief in Opposition (Dkt. No. 43) at p. 8. That same paragraph cites to the deposition testimony of the building owner to assert that Appalachian removed the remnant of the service conductor running from where the conductor was melted to the roof of the building back to the service pole. *Id.* This testimony is plainly stated to be inadmissible hearsay purportedly related to the witness by the fire chief. Deposition of Timothy Litz (previously filed as Dkt. No. 36-3) at p. 25. Moreover, as Appalachian has already shown, this assertion is flatly contradicted by materials already in the record, and it is also wholly irrelevant. *See* Appalachian's Reply Brief in Support of Motion to Exclude the Testimony Plaintiff's Expert John Moore (Dkt. No. 45) at pp. 6-7.

## II. PLAINTIFF POINTS TO NO EVIDENCE THAT COULD ESTABLISH NEGLIGENCE ON THE PART OF APPALACHIAN.

Appalachian's opening brief explained that even if the testimony of plaintiff's expert, Mr. Moore, were admissible (which it is not), plaintiff had no admissible evidence of any negligence on the part of Appalachian. Mr. Moore specifically stated that he did not believe that there was any failure in Appalachian's facilities or equipment and he would not – or could not – opine that there was any defect or deficiency in Appalachian's facilities or equipment.[2] There is likewise no evidence from which a jury could determine that Appalachian had actual or constructive knowledge of any dangerous condition, as Nautilus has not identified any fact witness who claims to have seen Appalachian's electrical conductor sagging against the metal roof, or who claims to have reported any unusual or hazardous condition to Appalachian at any time prior to the fire and Mr. Moore testified not only that he had no idea how long the electrical conductor was supposedly in contact with the roof of the building prior to the fire, but that *no one knows* how long it was supposedly sagging against the roof.[3] Finally, Appalachian explained why the doctrine of *res ipsa loquitur* should not apply on the facts of this case. Plaintiff's brief in opposition ***does not even address these arguments***. It offers no explanation of how Appalachian could conceivably be found to have violated any legal duty, and thereby concedes the issue. *Brand v. N. Carolina Dep't of Crime Control & Pub. Safety*, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) (labeling failure to respond as a concession).

Woods Rogers PLC
Attorneys at Law

---

[2] Deposition of John Moore (previously filed as Dkt. No. 36-1) at pp. 37-38.
[3] *Id.* at p. 38.

### III. APPALACHIAN IS ENTITLED TO SUMMARY JUDGMENT BECAUSE MR. MOORE'S TESTIMONY IS INADMISSIBLE UNDER FED. R. EVID. 702.

Nautilus admits that its case on causation rests entirely on the testimony of its expert, Mr. Moore.[4] Appalachian has explained in its brief in support of its motion to exclude Mr. Moore why that testimony is inadmissible under Rule 702 of the Federal Rules of Evidence[5] and it has explained in its reply brief in support of that motion how Nautilus wholly failed to address the numerous deficiencies in Mr. Moore's investigation and methodology – most glaringly, the fact that *no evidence* supports Mr. Moore's foundational assumption that Appalachian's electrical conductor was in contact with the metal roof of the building prior to the fire, and that the existing evidence in fact *contradicts* this assumption.[6] Appalachian incorporates all of the arguments and authorities from its reply brief in support of its Motion to Exclude Mr. Moore's testimony into this brief.

### IV. NAUTILUS IS GUILTY OF INTENTIONAL SPOLIATION OF EVIDENCE BY PERMITTING THE FIRE SCENE TO BE RAZED SOME TWO MONTHS BEFORE PROVIDING ANY NOTICE TO APPALACHIAN, THEREBY DEPRIVING APPALACHIAN OF ANY OPPORTUNITY TO CONDUCT ITS OWN INVESTIGATION. THIS INTENTIONAL SPOLIATION OF EVIDENCE SHOULD RESULT IN DISMISSAL OF ALL OF PLAINTIFF'S CLAIMS.

In its brief in opposition, Nautilus wholly ignores the undisputed timeline established by the record.

- The fire occurred on June 3, 2018, at approximately 3:29 p.m.;[7]

---

[4] Plaintiff's Brief in Opposition (Dkt. No. 43) at p. 3 ("Plaintiff bases its assertions [that material facts are in dispute] on the findings of its Origin and Cause expert, John Moore.")
[5] Dkt. No. 45.
[6] Appalachian's Reply Brief in Support of Motion to Exclude the Testimony of Plaintiff's Expert John Moore (Dkt. No. 45) at pp. 5.
[7] Moore Written Report at p. 2 (Dkt. No. 36-2 at p. 3.)

- Mr. Moore conducted his investigation on behalf of Nautilus on June 8, 2018;[8]

- According to Mr. Moore, at the conclusion of his investigation he had a telephone conversation with Barry Vice of Nautilus, in which he told Mr. Vice that the fire scene and evidence needed to be preserved so that Appalachian could conduct its own investigation;[9]

- Approximately one month later, in July 2018, Mr. Vice instructed Mr. Moore to close his file;[10]

- Around this same time, Nautilus told the building owner that he could go ahead and demolish the building;[11]

- The fire scene was then razed in or around August of 2018;[12]

- Some two months later, on October 26, 2018, Nautilus sent a letter to Appalachian advising it – for the first time – that Nautilus was claiming that Appalachian's facilities and equipment were somehow involved in causing the fire;[13]

- This notice letter was sent by certified mail and demanded a response by November 10, 2018 – although, curiously, the letter ***did not make any mention of a scene inspection nor did it invite Appalachian to inspect the fire scene***,[14] presumably because the scene had already been destroyed two months prior.

Nautilus makes a conclusory assertion that it "disagrees with [Appalachian's] assertion regarding the timeline of events,"[15] but it does not direct the Court to any record materials or evidence that contradict the timeline set out above. The demolition of the building in or around August 2018 is undisputed based on Mr. Litz's testimony as Nautilus has not come forward with any evidence that would suggest a different date.

Nautilus also cannot avoid the effect of its intentional spoliation of evidence by suggesting – without evidence – that Appalachian somehow "should have known" that it would

---

[8] Deposition of John Moore (previously filed as Dkt. No. 36-1) at p. 59.
[9] *Id.*
[10] *Id.* at pp. 92-93.
[11] Deposition of Timothy Litz (previously filed as Dkt. No. 36-3) at pp. 29-30.
[12] *Id.*
[13] Plaintiff's Brief in Opposition (Dkt. No. 43) at p. 8 & Exhibit A to Plaintiff's Brief in Opposition to Defendant's Motion to Exclude the Testimony of Plaintiff's Expert John Moore (Dkt. No. 42-1.).
[14] *See* Dkt. No. 42-1.
[15] Plaintiff's Brief in Opposition (Dkt. No. 43) at p. 8.

WOODS ROGERS PLC
ATTORNEYS AT LAW

be sued and therefore should have conducted its own investigation.[16] Nautilus cannot point to a single fact that would have put Appalachian on notice of a potential claim against it at any time prior to the date Appalachian received the October 26, 2018 letter from plaintiff's counsel. Nautilus in effect is suggesting that any time Appalachian receives a call to terminate electrical service at a fire scene then it is somehow magically on notice that a claim might be asserted against it (and, presumably, must therefore immediately hire a fire cause and origin expert and conduct its own investigation). There is no support whatsoever for this imagined "notice in the air" theory suggested by Nautilus.

By contrast, Nautilus was contemplating litigation from the earliest days. It had a cause and origin expert on site within five days of the fire, and the consultant specifically told Nautilus on that date that it needed to preserve the fire scene and evidence so that Appalachian could conduct its own investigation. But instead of notifying Appalachian, Nautilus instructed Mr. Moore to close his file; paid its insured; and permitted the fire scene to be razed. Only some two months later did Nautilus finally get around to sending a notice letter to Appalachian. By then, based on the undisputed record, the evidence had been destroyed.

Significantly, Nautilus does not take issue with any of the assertions by Appalachian's expert, Neil Daugherty, about the effect of the spoliation, nor has it addressed any of Appalachian's arguments about the effects of the spoliation.[17] It instead alternates between arguing in one breath that it was not guilty of spoliation (by simply ignoring the undisputed testimony from the building owner that the fire scene was razed in August 2018) and then arguing in the next breath that its spoliation should somehow be excused based on Appalachian's

---

WOODS ROGERS PLC
ATTORNEYS AT LAW

[16] *See id.*

[17] Incredibly, Nautilus asserts that the Court ought to deny summary judgment because Appalachian "has not been able to show any alternate cause of the fire" (Plaintiff's Brief in Opposition [Dkt. No. 43] at p. 5) – simply ignoring the fact that its own intentional spoliation of evidence is what deprived Appalachian of any ability to do so. This argument demonstrates why dismissal is the only appropriate sanction.

supposed failure to preserve the remnant of the service conductor (a remnant it never asked Appalachian to preserve; that was in fact photographed at the scene in December 2018; and that is wholly irrelevant to the case).[18] By failing to argue that any lesser sanction could remedy the prejudice, Nautilus has effectively conceded that dismissal is the only appropriate remedy for its spoliation.

### V. THE "CERTIFICATION" FROM PLAINTIFF'S COUNSEL SUBMITTED IN OPPOSITION TO THE MOTION SHOULD BE DISREGARDED.

As it did in opposing Appalachian's motion to exclude Mr. Moore's testimony, Nautilus has included with its brief in opposition to this motion a "Certification" from plaintiff's counsel purporting to swear to various "facts." This "Certification" is wholly improper, both because plaintiff's counsel was never identified as a witness with discoverable knowledge and because plaintiff's counsel has no personal knowledge of any of the purported "facts" relating to the fire and/or the cause of the fire. The Court should therefore disregard this purported "Certification." Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Kelly v. Eli Lilly & Co.*, 517 F. Supp.2d 99, 104 (D.D.C. 2007) ("[A]ffidavits provided by attorneys not made on personal knowledge are not considered during the granting of summary judgment."). Nautilus cannot avoid summary judgment by dressing up its mere allegations and having its counsel – who lacks any personal knowledge – swear to them as purported facts.

WOODS ROGERS PLC
ATTORNEYS AT LAW

---

[18] It is notable that since first advancing this debunked argument regarding the remnants of the service conductor almost a year ago, Nautilus has never been able to articulate why it supposedly needed to examine or test the remnant or what conceivable relevance it could have to the case.

*{2776613-1, 102967-00120-01}*        7

## CONCLUSION

For all of the foregoing reasons, the Court should grant summary judgment to Appalachian or, alternatively, it should dismiss all of plaintiff's claims with prejudice as a sanction for Nautilus' intentional spoliation of evidence.

          Respectfully submitted,

          APPALACHIAN POWER COMPANY

          **/s/ Mark D. Loftis**
By_____
          Of Counsel

Mark D. Loftis (VSB No. 30285)
WOODS ROGERS PLC
P.O. Box 14125
10 South Jefferson Street, Suite 1400
Roanoke, Virginia 24038-4125
Telephone: (540) 983-7600
Facsimile: Main (540) 983-7711 Direct (540) 322-3749
loftis@woodsrogers.com

   *Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of November, 2020, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

          **/s/ Mark D. Loftis**
          _____