IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| NAUTILUS INSURANCE CO., )<br>    Plaintiff, )<br> )<br>        v. )<br> )<br>APPALACHIAN POWER CO., )<br>    Defendant. ) | Case No. 7:19-cv-00380<br><br>By: Michael F. Urbanski<br>Chief United States District Judge |

## MEMORANDUM OPINION

This matter is before the court on defendant Appalachian Power Company's ("Appalachian") second motion to exclude the testimony of plaintiff Nautilus Insurance Company's ("Nautilus") expert John Moore, ECF No. 35, and its motion for summary judgment or, alternatively, to dismiss Nautilus's claims as a sanction for spoliation of evidence, ECF No. 37. Nautilus opposes both motions. ECF Nos. 42, 43. Appalachian filed replies for each. ECF Nos. 45, 46. The court heard argument on November 16, 2020. ECF No. 39. For the reasons explained herein, the court will **GRANT** Appalachian's motion to dismiss Nautilus's claim as a sanction for spoliation of evidence and **DENY as moot** Appalachian's motion to exclude the testimony of John Moore.

**I.     Background**

This case arises out of a fire that occurred on June 3, 2018, at the workshop for Electro Finishing, Inc., ("Electro"), located in Rural Retreat, Virginia ("the workshop"). At all relevant times, Appalachian provided electricity to the workshop through above-ground electrical cables over which Appalachian had full ownership, custody, and control. Electro, then owned by Timothy Litz, had previously purchased property insurance from Nautilus.

On May 17, 2019, Nautilus brought this subrogation action against Appalachian, claiming that Appalachian's electrical conductor caused the fire. Compl., ECF No. 1. Nautilus's five-count complaint seeks recovery for negligence, breach of contract, gross negligence, trespass, and nuisance. Id. at 4–10.

Nautilus has designated John Moore to testify about the fire's cause. Moore inspected the property on June 8, 2018. Moore Report, ECF No. 36-2, at 3. Moore reports that he told Nautilus's Barry Vice that evidence at the scene needed to preserved so Appalachian could conduct an inspection as well. Moore Dep, ECF No. 36-1, at 59. Moore did not personally contact anyone from Appalachian, but he assumed Nautilus would arrange a joint scene inspection later. Id. Vice instructed Moore not to retain any evidence from the scene during his investigation. Moore Report at 5. In July 2018, Vice told Moore that he could close his file. Moore Dep. at 92–93. Shortly thereafter, Vice told Litz he could demolish the building, which he did in late July or August 2018. Litz Dep., ECF No. 36-3, at 29–30. On October 26, 2018, Nautilus sent a letter to Appalachian placing it on notice of a potential claim. Notice Letter, ECF No. 36-6. Appalachian sent an expert to inspect the scene on December 19, 2018, but the building had already been razed. Moore Report at 3; Moore Dep. at 54.

This court previously granted Appalachian's motion to exclude Moore's testimony and strike his expert report. ECF No. 29 at 2. The court directed Nautilus to provide an updated report on or before February 17, 2020. Id. Nautilus did so and Appalachian now moves to exclude his testimony again, claiming his opinions are unreliable, "not based on sufficient facts or data," and do not satisfy Federal Rule of Evidence 702. Mem. in Supp. of Mot. to Exclude, ECF No. 36, at 2. Appalachian also moves for summary judgment,

claiming Nautilus has insufficient evidence to prove negligence or proximate causation without Moore's testimony. Mem. in Supp. of Mot. for Summ. J., ECF No. 38, at 2. Alternatively, Appalachian asks this court to dismiss Nautilus's claims as a sanction for spoliation of evidence. Id. From Appalachian's perspective, Nautilus allowed the building—and, therefore, all evidence except for Moore's photographs and observations—to be destroyed before its expert could investigate, and "this spoliation of evidence provides an independent basis for dismissal of all of Nautilus'[s] claims." Id.

## II.     Legal Standard

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (citation omitted). "The right to impose sanctions for spoliation arises from a court's inherent power to control the judicial process and litigation, but the power is limited to that necessary to redress conduct 'which abuses the judicial process.'" Id. (citing Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991). The Fourth Circuit has recognized "that when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to dismiss the action." United States v. Shaffer Equip. Co., 11 F.3d 450, 462 (4th Cir. 1993); see also Silvestri, 271 F.3d at 590. "The policy underlying this inherent power of the courts is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth." Silvestri, 271 F.3d at 590.

"While a district court has broad discretion in choosing an appropriate sanction for spoliation, 'the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.'" Id. Moreover, "dismissal without deciding the merits is the most extreme sanction" and can only be used "after considering several factors," including:

> (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

Shaffer, 11 F.3d at 462–63; see also Thompson v. United States, 219 F.R.D. 93, 101 (D. Md. 2003) (employing different three-factor test to determine if adverse inference instruction for spoliation was appropriate). Though culpability is but one factor among these, "a court must find some degree of fault to impose sanctions." Silvestri, 271 F.3d at 590.

### III.   Analysis

The court finds that Nautilus is responsible for spoliation of critical evidence in this case. Nautilus asserts there is a factual dispute regarding when the building was razed and when Appalachian knew of a potential claim, arguing Appalachian was on notice when it came to the site to repair and replace the electrical cables. Mem. in Opp., ECF No. 43, at 8–9 (citing Litz Dep., ECF No. 36-3, at 25). But Nautilus does not dispute that the building was razed in August 2018 and Nautilus notified Appalachian of its potential claim two months later on October 26, 2018. See Litz Dep. at 29–30 (testifying that it was "nearly August" when the building was razed and that it stood for "at least two months"); Notice

Letter, ECF No. 36-6. Nautilus essentially suggests that any time Appalachian receives a call to terminate electrical service at a fire scene, it is on notice that a claim might be asserted against it and it should hire a fire cause and origin expert to conduct an investigation. The Fourth Circuit has recognized that this sort of implied notice is insufficient to avoid sanctions for spoliation. See King v. American Power Conversion Corp., 181 F. App'x 373, 377–78 (4th Cir. 2006) (unpublished). In King, the plaintiffs argued dismissal could not be justified under Silvestri because their counsel reasonably believed the power company had been notified of the fire based on an unsubstantiated statement contained in the written report by a county investigator. But the Fourth Circuit found that "no effort was made by the Kings or their attorneys to contact American Power or verify that it had received notice" and "[a]ccordingly, the [plaintiffs] failed to discharge their duty to afford [the power company] sufficient notice." Id. at 377. Here, Appalachian was not on notice until it received Nautilus's letter, two months after Nautilus gave Litz permission to raze the building.

This court also finds that dismissal is the appropriate sanction. The spoliation at issue, as far as this court is aware, is entirely the result of the client's actions. Nautilus's own expert, Moore, says he told Vice that the scene of the fire needed to be preserved so Appalachian could conduct an inspection. Moore Dep., ECF No. 36-1, at 59. In fact, Moore claims he told the building owner to "leave everything as is," not to touch anything, and to not go back into the building "until [he] heard back from Mr. Vice, his insurance company." Id. at 49. Vice instructed Moore to not retain any evidence during his investigation on June 8, 2018. Moore Report, ECF No. 36-2, at 5. Moore told Vice that a joint inspection was necessary and was under the impression that Nautilus would arrange it. Moore Dep. at 59.

5

Instead, in July, Vice told Moore he could close his file, id. at 92–93, and he told Litz that he could raze the building. Litz Dep., ECF No. 36-3, at 29–30. There is no suggestion that Nautilus took these actions upon counsel's recommendation. Rather, Nautilus approved demolition of the building and spoliation of the fire cause and origin evidence.

To be sure, there is no evidence of bad faith on Nautilus's part—only inferences. But Appalachian need not demonstrate bad faith to succeed. "[E]ven when conduct is less culpable, dismissal may be necessary if the prejudice to the defendant is extraordinary, denying it the ability to adequately defend its case." Silvestri, 271 F.3d at 593. In fact, "sometimes even the inadvertent, albeit negligent, loss of evidence will justify dismissal because of the resulting unfairness." Id.

The prejudice here—both to the administration of justice and to Appalachian—is great. The fact that the building has been razed leaves Appalachian with insufficient evidence from which to form a scientifically reliable expert opinion as to the cause of the fire. Appalachian is forced to rely on the limited evidence collected by Nautilus's expert. In King, for example, the Fourth Circuit affirmed dismissal in a fire case where critical evidence had been destroyed and the power company was left to rely on the plaintiffs' expert's report, finding that this left the company with "no adequate means to defend against the claims at issue." King, 181 F. App'x at 378; see also State Farm Fire & Cas. Co. v. P.E.P.C.O., CIV. JKS 09-3459, 2010 WL 4054315, at *2 (D. Md. Oct. 15, 2010) ("a defendant is prejudiced if as a result of the plaintiff's actions the defendant is forced to rely on the observations and conclusions of the plaintiff's experts"). Appalachian's expert, Neil Daugherty, alleges that Moore's photographs and documentation of his investigation are wholly inadequate and

6

cannot substitute for physical examination and testing of the space and the equipment within it. Mem. in Supp. of Mot. for Summ. J., ECF No. 38, at 11. As Appalachian notes, this evidence is "the linchpin" of its defense. Id. The judicial process and the administration of justice are also prejudiced by this conduct. This "process depends on the adversarial presentation of evidence" for its legitimacy. Shaffer, 11 F.3d at 457. Without fair opportunities for both parties to build their case, the court's efforts to uncover truth and administer justice are unacceptably hindered.

This court must also consider the availability of other sanctions. Appalachian argues that no other remedy besides dismissal will truly level the playing field given the fact that Appalachian will be forced to rely on a record developed by Nautilus's expert. Mem. in Supp. of Mot. for Summ. J., ECF No. 38, at 12–13. If not dismissal, Appalachian suggests this court should not allow Nautilus to rely on the doctrine of res ipsa loquitur to overcome a lack of evidence suggesting negligence. Id. at 13 n. 24. The court agrees that nothing short of dismissal will do. In Silvestri, the court reasoned that "[t]o require [Appalachian] to rely on the evidence collected by [Nautilus's] experts in lieu of what it could have collected would result in irreparable prejudice. Short of dismissal, the district court would have been left to formulate an order that created facts as established or that created presumptions." Id. at 594. The Fourth Circuit affirmed the district court's decision to dismiss, holding that, "to justify the harsh sanction of dismissal, the district court must consider both the spoliator's conduct and the prejudice caused and be able to conclude either (1) that the spoliator's conduct was so egregious as to amount to a forfeiture of his claim, or (2) that the effect of the spoliator's conduct was so prejudicial that it substantially denied the defendant the ability

7

to defend the claim." Id. at 593. Here, the court is convinced that, even if not so egregious as to amount to forfeiture, Nautilus's conduct was so prejudicial that it substantially denied Appalachian the ability to defend itself and dismissal is the appropriate remedy. See King, 181 F. App'x at 378 ("As the district court noted, the exclusion of the investigatory reports or testimony from the consultants was not an option as the Kings would be rendered unable to prove their case…. The Kings fail to suggest specific language that would have protected American Power, and we cannot conceive of how such an instruction would adequately level the playing field under the circumstances of this case.") (internal citation omitted).

Overall, the court finds dismissal is in the public's interest, as a lesser sanction would reward improper conduct, place Appalachian at a significant disadvantage, and unacceptably hinder fair adjudication. Because Nautilus's actions are "utterly inconsistent with the orderly administration of justice [and] undermine[] the integrity of the process, the court [will exercise its] inherent power to dismiss the action." Shaffer, 11 F.3d at 462.

### IV. Conclusion

For these reasons, the court will **GRANT** Appalachian's motion to dismiss Nautilus's claims as a sanction for spoliation of evidence. Because the court will dismiss all claims, the court will **DENY AS MOOT** Appalachian's motion to exclude the testimony of John Moore. An appropriate order will be entered.

It is so **ORDERED**.

Entered: April 7, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.04.07 13:12:09
-04'00'

Michael F. Urbanski
Chief United States District Judge